UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

───────────────

№ 07-CV-3960 (JFB)

───────────────

DAVID BEEBE,

Plaintiff,

VERSUS

MICHAEL J. ASTRUE,

Defendant.

───────────────

**MEMORANDUM AND ORDER**
December 15, 2008

───────────────

JOSEPH F. BIANCO, District Judge:

Plaintiff David Beebe ("plaintiff" or "Beebe") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking review of the decision of the Commissioner of Social Security, dated June 29, 2005, denying Beebe's request for waiver of an alleged overpayment of disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). Specifically, the Commissioner found that plaintiff had received an overpayment of disability insurance benefits totaling $38,131.00 and that the recovery of the overpayment should not be waived.

Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants defendant's motion for judgment on the pleadings and affirms the decision of the Administrative Law Judge ("ALJ"). Plaintiff's cross-motion is denied.

I. BACKGROUND

The Social Security Administration (the "SSA") accorded plaintiff DIB commencing January 1998 on the grounds that his ankle was no longer completely functional. (Administrative Record (hereinafter, "Tr.") 22, 156-57.) In March 1999, plaintiff went back to work as a desk clerk at All Island Marine Corp. (Tr. 37, 157.) In November 1999, plaintiff completed his Trial Work Period ("TWP") (Tr. 24.) The TWP is a nine-month period during which a person receiving DIB may attempt to work, but still receive DIB. 20 C.F.R. § 404.1592. Three months after completing the TWP, the DIB recipient becomes ineligible for benefits if he

is able to perform "substantial gainful activity." 20 C.F.R. §§ 1592, 1592a. Thus, plaintiff was no longer eligible for DIB as of March 2000. (Tr. 24, 54.) In fact, plaintiff earned $28,173.56 in 2000, $32,240.45 in 2001, and $32,017.11 in 2002. (Tr. 37, 131.) Nevertheless, plaintiff erroneously received DIB for the period of time between March 2000 and July 2003. (Tr. 54, 58.)

On May 2, 2003, plaintiff was notified that his disability ended because of substantial work and he was not entitled to payments beginning in March 2000. (Tr. 51-53.) Plaintiff was given the opportunity to provide more information that he might want the SSA to consider. (Tr. 51.) On July 7, 2003, plaintiff was sent a follow-up letter confirming the agency's determination that his disability ended and he was not entitled to benefits beginning in March 2000. (Tr. 54-56.) On July 7, 2003, plaintiff called the SSA regarding checks he was still receiving and stated that he wanted to "withdraw from disability." (Tr. 58.)

By form dated March 17, 2004 and by letter from counsel, dated April 14, 2004, plaintiff requested a waiver of the Title II overpayment of benefits. (Tr. 77-84, 95-97.) On October 22, 2004, plaintiff appeared with his attorney at a special determination conference, after which his request was denied. (Tr. 87-90.) On January 11, 2005, a request for a hearing was received from plaintiff. (Tr. 91.) Such hearing was held on June 2, 2005 by Administrative Law Judge ("ALJ") Seymour Rayner. (Tr. 153-95.)

On June 29, 2005, after considering the matter *de novo*, ALJ Rayner issued a written decision (Tr. 13-16) in which he concluded, among other things, the following:

> [T]he undersigned finds that the claimant was not "without fault" in receiving the benefits and was no [sic] eligible for same due to working. The claimant knew he was receiving the benefits improperly and did not respond timely to requests in 1999 for verification of earnings from employment.
>
> Therefore, the undersigned finds the claimant was not "without fault" in causing and accepting the overpayment of $38,131.00. The undersigned further finds that recovery of the overpayment would not defeat the purpose of Title II of the Act, and not be against equity and good conscience. Therefore, recovery of the overpayment is not waived. The undersigned recommends that the overpayment be repaid at a rate of $450.00 a month.

(Tr. 15-16.) This decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. (Tr. 3-5.)

II. PROCEDURAL HISTORY

Beebe filed his complaint in this action on September 21, 2007. On March 21, 2008, the parties submitted their cross-motions for judgment on the pleadings. On May 2, 2008, the parties submitted reply memoranda of law.

2

## III. STANDARD OF REVIEW

A district court may only set aside a determination by an ALJ that is based upon legal error or that is unsupported by substantial evidence. *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998) (citing *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982)). The Supreme Court has defined "substantial evidence" in Social Security cases as "more than a mere scintilla" and that which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Quinones v. Chater*, 117 F.3d 29, 33 (2d Cir. 1997) (adopting the Supreme Court's definition in *Richardson* of "substantial evidence"). Furthermore, "[i]t is up to the agency, and not th[e] court, to weigh the conflicting evidence in the record." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). If the court finds that there is substantial evidence to support the Commissioner's determination, the decision must be upheld, even if there is substantial evidence for the plaintiff's position. *See, e.g., Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998); *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey*, 145 F.3d at 111; *see also Jones*, 949 F.2d at 59 ("[t]he court may not substitute its own judgment for that of the Secretary, even if it might justifiably have reached a different result upon a *de novo* review.") (quoting *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984)).

## IV. DISCUSSION

Plaintiff does not dispute that he was erroneously overpaid DIB for the time during which he was working and not entitled to benefits between March 2000 and July 2003. (Tr. 54; Plaintiff's Memorandum of Law, at 2.) Instead, plaintiff seeks judgment on the pleadings, arguing that the denial of his request for waiver of a Title II overpayment of disability benefits "is infected with legal error and not supported by substantial evidence." (Plaintiff's Memorandum of Law, at 1.) The Commissioner also has moved for judgment on the pleadings "affirming his final decision that plaintiff received an overpayment of disability insurance benefits totaling $38,131.00 and that the recovery of the overpayment should not be waived." (Defendant's Memorandum of Law, at 1.)

### A. Legal Standard for Waiver of Overpayments

Pursuant to 42 U.S.C. § 404(a)(1), whenever the Commissioner finds that an overpayment of benefits has been made to an individual, the Commissioner must recover the amount of the overpayment by decreasing a payment due to such individual or requiring a refund of the overpayment. *See id.* However, the Commissioner must waive the repayment of the overpaid benefits if (1) the recipient of the overpayment was "without fault," and (2) recovery would defeat the purpose of Title II of the Social Security Act or be against equity and good conscience. *See id.* § 404(b); 20 C.F.R. § 404.506.

Under the applicable regulations, an individual will be found to be at fault in connection with the overpayment if the overpayment resulted from one of the following: (a) "[a]n incorrect statement made by the individual which he knew or should have known to be incorrect"; or (b) "[f]ailure to furnish information which he knew or should have known to be material"; or (c)

3

"acceptance of a payment which he either knew or could have been expected to know was incorrect." 20 C.F.R. §404.507. In determining whether an individual is at fault, the Social Security Administration must "consider all pertinent circumstances" which include "the individual's age and intelligence, and any physical, mental, educational, or linguistic limitations (including any lack of facility with the English language) the individual has." *Id.* The Second Circuit has made clear that it has "interpreted this rule [*i.e.*, 20 C.F.R. § 404.507] liberally, making it relatively easy for the Secretary to recover an overpayment: 'No showing of bad faith is required; rather, an honest mistake [by the individual] may be sufficient to constitute fault.'" *Barone v. Bowen,* 869 F.2d 49, 51 (2d Cir. 1989) (quoting *Center v. Schweiker*, 704 F.2d 678, 680 (2d Cir. 1983)).

With respect to the proper procedure for determining fault, the Second Circuit has made clear, relying on Supreme Court precedent, that "where a claimant's 'fault' in receiving overpayments is in issue, recoupment must be preceded by a hearing, since findings of 'fault' require credibility evaluations which can only be properly considered at an oral hearing." *Dorman v. Harris*, 633 F.2d 1035, 1038 n.2 (2d Cir. 1980) (citation omitted) (citing *Califano v. Yamasaki*, 442 U.S. 682 (1979)). The rationale for this rule was clearly articulated by the Supreme Court in *Califano*:

> As the Secretary's regulations make clear, "fault" depends on an evaluation of "all pertinent circumstances" including the recipient's "intelligence . . . and physical and mental condition" as well as his good faith. We do not see how these can be evaluated absent personal contact between the recipient and the person who decides his case. Evaluating fault, like judging detrimental reliance, usually requires an assessment of the recipient's credibility, and written submissions are a particularly inappropriate way to distinguish a genuine hard luck story from a fabricated tall tale.

*Califano*, 442 U.S. at 696-97 (citation omitted); *accord Schwingel v. Harris*, 631 F.2d 192, 196 (2d Cir. 1980); *see also Jefferson v. Bowen,* 794 F.2d 631, 633 (11th Cir. 1986) ("'[T]he decision which must be reached in a fault determination is highly subjective, highly dependent on the interaction between the intentions and state of mind of the claimant and the peculiar circumstances of his situation.'") (quoting *Harrison v. Heckler,* 746 F.2d 480, 482 (9th Cir. 1984)).

Even if the recipient can demonstrate that he is without fault, he is still responsible for the overpayment unless he can also demonstrate that the recovery by the Commissioner would defeat the purpose of Title II of the Act or would be against equity and good conscience. 20 C.F.R. §§ 404.508-09; *accord Valente,* 733 F.2d at 1042 ("Assuming that the recipient can show that he is without fault, the statutory standard places the burden on him to show also that repayment would either be inequitable or would defeat the purposes of the Act."). However, these additional factors need only be considered if the first requirement is satisfied – namely, that the recipient is without fault. *See Chlieb v. Heckler*, 777 F.2d 842, 846 (2d Cir. 1985) ("[w]e need not consider whether recovery of the overpayments would defeat the purpose of

4

Title II or would be against equity and good conscience, since those factors come into play only if the recipient is without fault").

Recovery of an overpayment would defeat the purpose of Title II of the Act if such recovery would "deprive a person of income required for ordinary and necessary living expenses." 20 C.F.R. § 404.508(a). The analysis under this standard "depends upon whether the person has an income or financial resources sufficient for more than ordinary and necessary needs, or is dependent upon all of his current benefits for such needs." *Id.* Pursuant to the applicable regulation, ordinary and necessary expenses include fixed living expenses, such as food, clothing, rent, mortgage payments, utilities, maintenance, insurance, taxes and installment payments. *Id.* §404.508(a)(1). Other ordinary and necessary expenses include medical bills, hospitalizations, expenses for the support of others for whom the individual is legally responsible, and other miscellaneous expenses which may reasonably be considered as part of the individual's standard of living. *Id.* §404.508(a)(2)-(4). The applicable regulation also makes clear that "[a]djustment or recovery will defeat the purposes of title II in (but is not limited to) situations where the person from whom recovery is sought needs substantially all of his current income (including social security monthly benefits) to meet current ordinary and necessary living expenses." *Id.* § 404.508(b).

Recovery of an overpayment can be "against equity and good conscience" where an individual demonstrates that he "changed his or her position for the worse" or "relinquished a valuable right . . . because of reliance upon a notice that a payment would be made or because of the overpayment itself." *Id.* § 404.509(a)(1). The applicable regulation notes that "[t]he individual's financial circumstances are not material to a finding of against equity or good conscience" and gives examples of how this standard can be satisfied. *Id.* § 404.509(b).[1]

Finally, the regulations specifically provide that, where a claimant accepts an overpayment because of or reliance on erroneous information from an official source within the Social Security Administration with respect to, among other things, an interpretation of the Act or its regulations, such an individual is deemed to have accepted the overpayment "without fault" and the recovery of such overpayment is waived because it is also deemed, under such circumstances, to be "against equity and good conscience." *Id*. §§ 404.510a and 404.512.[2] The Second Circuit has explained

---

[1] One of these examples is argued by plaintiff to be analogous to plaintiff's situation with respect to his purchase of property in Pennsylvania. This argument is addressed *infra*. 20 C.F.R. § 404.509(b)(1) provides in relevant part: "Example 1. A widow, having been awarded benefits for herself and daughter, entered her daughter in private school because the monthly benefits made this possible. After the widow and her daughter received payments for almost a year, the deceased worker was found to be not insured and all payments to the widow and child were incorrect. The widow has no other funds with which to pay the daughter's private school expenses. Having entered the daughter in private school and thus incurred a financial obligation toward which the benefits had been applied, she was in a worse position financially than if she and her daughter had never been entitled to benefits. In this situation, the recovery of the payments would be against equity and good conscience." *Id.*

[2] 20 C.F.R. § 404.510a provides as follows: "A benefit payment under title II or title XVIII of the Act to or on behalf of an individual who fails to meet one or more requirements for entitlement to such payment or a benefit payment exceeding the amount to which he is entitled, constitutes an entitlement overpayment. Where an individual or other person on behalf of an individual accepts such overpayment because of reliance on erroneous information from an official source within the Social Security Administration (or other governmental agency which the individual had

5

how district courts should review whether the above-referenced factors for waiver of overpayments have been satisfied in light of the general legal framework for review of decisions by the Commissioner:

> The Secretary's determination of whether these factors have been satisfied may not lightly be overturned. First, the district court must uphold a decision by the Secretary that a claimant was not without fault if it is supported by substantial evidence in the record as a whole, because that determination is factual in nature. Further the issues of whether repayment would defeat the purposes of the Act or be against equity or good conscience implicate an exercise of informed judgment, and the Secretary has considerable discretion in making these determinations. Factual determinations by the Secretary in relation to these issues must be upheld if supported by substantial evidence, . . . and the Secretary's exercise of her judgment on the basis of such factual determinations is entitled to considerable deference. The court may not substitute its own judgment for that of the Secretary, even if it might justifiably have reached a different result upon a de novo review.

*Valente,* 733 F.2d at 1041 (citations omitted).

### B. Application

As discussed in detail below, after carefully reviewing the administrative record in this case, the Court concludes that there is substantial evidence to support the determinations of the ALJ that (1) plaintiff was not "without fault" in causing and accepting the overpayment, (2) recovery of the overpayment would not defeat the purpose of Title II of the Act, and (3) recovery of the overpayment would not be against equity and good conscience. Accordingly, judgment on the pleadings in favor of defendant is warranted.

### (1) Substantial Evidence Supported the Determination that Plaintiff Was At Fault

The reasons provided by the ALJ to support his determination, under the applicable regulations, that plaintiff was not

---

reasonable cause to believe was connected with the administration of benefits under title II or title XVIII of the Act) with respect to the interpretation of a pertinent provision of the Social Security Act or regulations pertaining thereto, or where an individual or other person on behalf of an individual is overpaid as a result of the adjustment upward (under the family maximum provision in section 203 of the Act) of the benefits of such individual at the time of the proper termination of one or more beneficiaries on the same social security record and the subsequent reduction of the benefits of such individual caused by the reentitlement of the terminated beneficiary(ies) pursuant to a change in a provision of the law, such individual, in accepting such overpayment, will be deemed to be "without fault." For purposes of this section "governmental agency" includes intermediaries and carriers under contract pursuant to sections 1816 and 1842 of the Act." *Id.*

In addition, 20 C.F.R. § 404.512 provides, in relevant part, as follows: "Adjustment or recovery deemed 'against equity and good conscience.' In the situations described in §§ 404.510(a), (b), and (c), and 404.510a, adjustment or recovery will be waived since it will be deemed such adjustment or recovery is against equity and good conscience." *Id.*

6

without fault in connection with the overpayment – namely, plaintiff failed to comply with his reporting responsibilities to furnish certain material information in 1999 and plaintiff knew he was receiving benefits improperly – were supported by substantial evidence.

First, as stated earlier, a beneficiary may be found to be at fault for failure to furnish information which he knew or should have known to be material. 20 C.F.R. § 404.507(b). The ALJ determined that Beebe was at fault for failing to complete forms regarding his employment in 1999. (Tr. 15.) This determination is supported by a report filed at the Patchogue district office on May 12, 1999, which states, "In the initial package, the CL received the 1219 letter, a TWP pamphlet, 821 work activity report, and medicare info. A follow up call was made. An L34 letter was then sent. There were no replies. Since the CL failed to cooperate, work cannot be verified." (Tr. 23.) The record does not show any response from the plaintiff to the SSA's request for information until a Report of Continuing Disability Interview dated June, 26, 2002. (Tr. 26.) The failure of Beebe to provide promptly the requested employment and medical information may have affected the ability of the SSA to update Beebe's disability status and accordingly discontinue his benefits. The unfurnished information was therefore material and supports the ALJ's determination that Beebe was not without fault in causing or accepting overpayment.

Plaintiff's arguments that this finding was not supported by substantial evidence are unpersuasive. First, plaintiff contends that the ALJ made reference to an April 23, 1999 request for information, which is not contained in the record. As a threshold matter, although no written request for information is contained in the record from that date, there is reference to such a request in a document prepared by the Claims Representative and that document (which is page 4 of Exhibit 14 in the record) was cited by the ALJ. (Tr. at 87-90.) In any event, any objection to lack of supporting documentation for such a request for information is not sufficient to disturb the ALJ's finding on this issue because the subsequent request for information, as noted above, is clearly supported in the record by the May 12, 1999 report of contact. Although acknowledging that the May 12, 1999 report indicates plaintiff's failure to return forms for the medical continuing disability review, plaintiff argues that such information was ultimately supplied in 1999. *See* Plaintiff's Memorandum of Law, at 8 ("While the record does indicate a May 12, 1999 report of contact indicating that Mr. Beebe had not yet returned certain forms for the medical continuing disability review, that material was ultimately supplied since the October 1999 CDR was resolved in Mr. Beebe's favor.").) However, plaintiff has cited to nothing in the record which indicates that any additional information was provided by plaintiff in 1999; rather, as noted above, the only response by plaintiff contained in the record is in June 2002. (Tr. 26.) Instead, given the lack of support in the record for his position that he supplied the information in 1999, plaintiff simply speculates that the information must have been provided because the October 1999 CDR was resolved in plaintiff's favor. Such speculation regarding the timing and adequacy of information purportedly provided by the plaintiff, which is not supported by anything in the record, is not a sufficient basis for disturbing the ALJ's finding, which was supported by substantial evidence contained in the record.

In any event, the ALJ also provided a second, independent basis for finding that

plaintiff was at fault, and such basis also was supported by substantial evidence. Specifically, a beneficiary may also be found to be at fault for acceptance of a payment which a beneficiary either knew or could have been expected to know was incorrect. 20 C.F.R. § 404.507(c). At various times during his hearing before the ALJ, plaintiff testified that he was aware of the temporary nature of the continuing disability benefits. (*See, e.g.,* Tr. 158 ("They let me know that there was a program where I can get paid on Social Security for a certain amount of time while I was working and if it didn't work out, I could still be on the Social Security."); Tr. 159 ("Well, she let me know that discontinuing the disability right now may be a mistake so that they had the program where I could like go for a year working and collecting just in case things didn't go, you know, go correctly."); Tr. 161 ("Approximately a year later, I was still receiving checks. They had told me that you receive them for a certain amount of time and then it would stop.").) There is also evidence in the record, cited by the ALJ, that plaintiff received a pamphlet entitled "Working While Disabled . . . How Social Security Can Help," which explained the reporting and eligibility requirements. (Tr. 36.) Finally, the May 12, 1999 Report of Contact indicates that plaintiff was aware of the trial work period ("TWP") parameters and believed that his TWP would end in November 1999. (Tr. 23.)

In light of the documentation and testimony at the hearing regarding plaintiff's awareness of the temporary nature of the program, there is substantial evidence to support the determination of the ALJ that plaintiff knew or should have known that he was not entitled to benefits following the completion of his TWP.

Plaintiff contends that this finding was erroneous because, among other things, the ALJ failed to rebut plaintiff's testimony regarding the March 2000 telephone calls to the Social Security Administration in which he claimed he was advised that there had been a "settlement" and he was allegedly assured that "everything was correct." (Tr. 118, 164) Plaintiff also argues that the ALJ failed to make the required credibility findings. However, the Court finds these contentions to be without merit. The ALJ's decision makes abundantly clear that he fully considered plaintiff's testimony, including the testimony regarding the March 2000 telephone call:

> The claimant testified that he notified the Patchogue District Office in March 1999 of his working. He said he was told he could get paid benefits while working. About April or May 2000 he was still receiving benefits. He called an 800 telephone number and spoke with a woman and was told everything was in order and they would call back. A month later the claimant called the 800 number and spoke with someone who assured him that "everything was in order" and "correct" and some sort of "settlement" would be made. In October 2002 he was sent some paperwork which he completed on November 5, 2002 and mailed back. He received notification from the Social Security Administration that his benefit payments would increase October 31, 2002 (Exhibit 27), which led him to believe he was properly receiving his disability

benefits though working. The claimant's able counsel, in a letter dated March 15, 2005, urges that the claimant was advised on October 31, 2002 that he was eligible to participate in the "Ticket to work" program (Exhibit 26).

(Tr. at 14-15.) After summarizing plaintiff's testimony and position, the ALJ then rejected each argument and cited the evidence that contradicted plaintiff's position. With respect to the alleged telephone calls to the 800 number, the ALJ rejected that testimony in light of the fact that it lacked any details regarding to whom plaintiff spoke or any explanation as to why he did not contact his District Office and, thus, was unverifiable. (*See* Tr. at 15 ("Lastly the claimant cannot state to whom he spoke at the 800 number or explain why he did not contact his District Office. Thus, there is no way to verify the claimant's testimony.").) Thus, although the ALJ did not explicitly refer to plaintiff's "credibility" in his analysis, there is no question from the record that he assessed plaintiff's uncorroborated testimony on this issue and found it to be not credible in light of its vagueness and the other evidence in the record.[3] Finally, although plaintiff suggests to this Court that it is the Commissioner's burden to verify any such contacts claimant had on this issue, the Court disagrees with that contention. Here, plaintiff, not the Commissioner, has the burden of demonstrating that he relied on erroneous information from an SSA employee that entitles him to a waiver and, based upon the record in this case, there is no basis to disturb the ALJ's rejection of plaintiff's testimony on that issue.

In short, there is substantial evidence to support the ALJ's finding that the plaintiff knew or should have known that he was not entitled to benefits and, in reaching that decision, the ALJ properly considered and rejected plaintiff's testimony suggesting that he erroneously relied on oral information received on an 800 number from an unidentified SSA employee.[4]

In sum, this Court concludes that there was substantial evidence to support the ALJ's determination that plaintiff was not

---

[3] Defendant also notes that there were some inconsistencies in plaintiff's various statements regarding these telephone calls: "[P]laintiff's testimony at his hearing (*see* Tr. 162-64) is somewhat at odds with an earlier affidavit he submitted (*see* Tr. 117-18), in that in the hearing he describes three calls to the 800 number in early 2000, whereas in his affidavit he describes only two calls. There is also a discrepancy in the dates of the calls. Plaintiff's inability to provide even this small amount of verification as to these conversations led the ALJ to reject plaintiff's testimony, observing that plaintiff's assertions regarding these conversations could not be verified. Tr. 15." (Defendant's Reply Memorandum, at 2.) Although these inconsistencies provide additional support for the ALJ's conclusions, as discussed in detail above, the ALJ gave a clear basis for rejecting plaintiff's testimony on this issue even apart from these inconsistencies.

[4] The ALJ also specifically rejected plaintiff's other contentions in his written decision. For example, with respect to plaintiff's belief that he was eligible for the "ticket to work" program, the ALJ stated: "The undersigned finds that counsel's argument that the claimant was told he was eligible for benefits under the 'ticket to work program' is in error. The ticket to work program (Exhibit 26) started in September 2002. The claimant was receiving and keeping benefit checks from December 1, 1999 to which he was not entitled." (Tr. 15.) Similarly, with respect to the increase in benefits on October 31, 2002, the ALJ found the following: "The undersigned further finds the receipt by the claimant of notices of benefit rate increases is not a satisfactory or plausible explanation to validate keeping the benefit payments he was improperly receiving. The notice is a proforma notice sent to claimants in general for increasing benefits to which they were entitled." (Tr. 15.)

9

without fault and, thus, judgment on the pleadings in favor of defendant is warranted.

(2) Substantial Evidence Supported the Determination That Overpayment Would Not Defeat the Purpose of the Act and Would Not be Against Equity and Good Conscience

Although this Court need not review the remaining requirement given that there is no basis to disturb the Commissioner's finding regarding fault, the Court, in an abundance of caution, has analyzed the other factors and concludes that the determination on those issues also was supported by substantial evidence.

First, there is substantial evidence to support the determination of the ALJ that recovery of the overpayment would not defeat the purpose of Title II by depriving plaintiff of substantially all of his current income required for "ordinary and necessary living expenses." 20 C.F.R. § 404.508. Plaintiff and his wife are both employed and have no dependents. (Tr. 170-72.) Plaintiff's 2003 Federal tax return reflected combined earnings of $51,253.00. (Tr. 137-39.) Plaintiff purchased land and a trailer in Pennsylvania for $22,000.00 on January 11, 2002. (Tr. 62-76, 172.) Plaintiff has $9,000.00 in his 401K account, he had $1,000.00 in the bank as of June 2, 2005, and his employer pays his health insurance. (Tr. 174.) Plaintiff indicated in a form completed on March 17, 2004 that his monthly household take-home pay was $3,246.00. (Tr. 81.)

As noted *supra,* ordinary and necessary expenses include fixed living expenses, such as food, clothing, rent, mortgage payments, utilities, maintenance, insurance, taxes and installment payments. 20 C.F.R. §404.508(a)(1). Other ordinary and necessary expenses include medical bills, hospitalizations, expenses for the support of others for whom the individual is legally responsible, and other miscellaneous expenses which may reasonably be considered as part of the individual's standard of living. 20 C.F.R. §404.508(a)(2)-(4). Taking these various factors into account, in questioning the plaintiff at the hearing, the ALJ determined plaintiff's monthly expenses to be $1,835.00 a month. (Tr. 15.) Therefore, that leaves plaintiff with $1,411.00 after monthly expenses are subtracted from his take-home pay. The ALJ recommended that plaintiff repay the overpayment at a rate of $450.00 per month. (Tr. 16.) Based upon those calculations, after expenses and the repayment installment, plaintiff still would be left with $961.00 per month. Accordingly, there was substantial evidence to support the ALJ's determination that the recovery of the overpayment would not deprive plaintiff of the income required for ordinary and necessary living expenses, and would not defeat the purpose of Title II of the Social Security Act.

Plaintiff contends that the ALJ's economic analysis was deficient because it calculated his ordinary and necessary expenses to be $1,835.00 per month, even though he indicated on a form completed on March 17, 2004 that his monthly expenses were $3,344.00. (Tr. 82.) However, that form reflected certain expenses that no longer existed by the time of plaintiff's hearing before the ALJ on June 2, 2005. For example, the March 17, 2004 form indicates the following expenses per month in connection with plaintiff's home: $1,200.00 in rent, $205.00 in utilities, $141.00 in other heating/cooking fuel. (Tr. 82.) However, at the June 2005 hearing, plaintiff indicated that he had moved and that his current rent was $700.00 per month and he did not pay any additional money for utilities at this new location. (Tr. 173, 178.) Similarly, although the March 17, 2004 form indicates

10

expenses of $408.00 per month related to the land and trailer that plaintiff purchased in January 2002, these expenses from this land and trailer, which did not serve as plaintiff's primary residence, are not part of ordinary and necessary living expenses under the regulation. (Tr. 82.) Moreover, at the hearing, in addition to asking questions regarding plaintiff's current rent ($700.00 per month), the ALJ also questioned plaintiff regarding his other current expenses, including those related to car payments ($200.00 per month), food (approximately $300.00-350.00 per month), gas (approximately $88.00 per month), credit card payments ($200.00 per month), shoes (approximately $45.00 per month and $190.00 every three years – or approximately $5.00 per month – for a special pair of shoes), and telephone ($35.00 per month). (Tr. 177-84). The ALJ also considered expenses for clothing, which was $60.00 per month on his 2004 form (and plaintiff was unable to estimate at the hearing), and insurance, which was $204.00 per month on his 2004 form. (Tr. 82.) If these calculations are added together (using the low end of the estimate for food), the total expenses are $1,837.00. Therefore, the ALJ's determination of $1,835.00 per month in ordinary and necessary living expenses is supported by substantial evidence in the record.

Finally, the ALJ's conclusion that recovery of the overpayment would not be against equity and good conscience also is supported by substantial evidence in the record. Plaintiff contends that "[r]ecovery of the overpayment against Mr. Beebe and his wife would be against equity and good conscience because he and his wife 'changed his or her position for the worse' and 'relinquished a valuable right because of reliance' on disability payments that subsequently are found to be erroneous." (Plaintiff's Memorandum of Law, at 21 (quoting 20 C.F.R. § 404.509(a)(1)).)

Specifically, with respect to changing their position for the worse, plaintiff points to the fact that he and his wife purchased a small plot of land with a trailer in Pennsylvania, put $3,000 down payment on the property in January 2002, and assumed a mortgage of $19,381. *Id.* Moreover plaintiff argues:

> The purchase of the property in Pennsylvania represents a change in Mr. Beebe's [position] for the worse because he assumed financial obligations that he cannot easily back out of. He and his wife are now locked into paying the mortgage even though they no longer have the roughly $1,000 disability benefits as part of their monthly income. When SSA notified him of the overpayment in May 2003, Mr. Beebe's total equity in the property was just $5,214. Yet he and his wife had paid in $2,506 in interest on top of that. This is similar to claimant in "example 1" who uses the Social Security benefit to pay for her daughter's education and who is then locked into an education that they would not otherwise not [sic] have undertaken.

*Id.* at 21-22. The Court rejects this argument and plaintiff's attempt to analogize to Example 1 in 20 C.F.R. § 404.509(b). First, plaintiff and his wife purchased this land with money received as wedding gifts and not with the overpayment monies. (*See* Plaintiff's Memorandum of Law, at 5 ("In

11

August 2001, Mr. Beebe married. Tr. 118. With cash they received from their wedding they purchased a small piece of property in Pike County Pennsylvania. Id.").) Moreover, unlike the tuition situation in Example 1 of the regulation, plaintiff has a number of potential options available to him in this situation, including selling the Pennsylvania property, renting it, or moving into it. Thus, it is far from clear that recovery of this overpayment will result in plaintiff changing his or her position for the worse.

Similarly, plaintiff contends that he "relinquished a valuable right in reliance" on the overpayments in that he was unable to obtain moderate income housing in the Town of Babylon because the disability benefits put them just over the allowable guidelines. (Plaintiff's Memorandum of Law, at 22.) However, the conclusory statement in plaintiff's affidavit to the Social Security Administration regarding such special housing, their qualifications regarding such housing, and purported differentials in costs from failing to qualify for such housing does not provide a sufficient evidentiary basis in the record to conclude that the ALJ erred in finding that the factor was not satisfied.[5]

In sum, there is substantial evidence to support the ALJ's finding that plaintiff did not demonstrate that adjustment or recovery of the overpayment would either defeat the purpose of Title II of the Act, or be against equity and good conscience.

## V. CONCLUSION

For the foregoing reasons, this Court grants defendant judgment on the pleadings and affirms the decision of the ALJ. Plaintiff's cross-motion is denied. The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: December 15, 2008
Central Islip, NY

\* \* \*

Plaintiff is represented by Christopher James Bowes, Esq., 54 Cobblestone Drive, Shoreham, New York, 11786. Defendant is represented by Thomas McFarland, Esq., of the United States Attorney's Office, 610 Federal Plaza, Central Islip, New York, 11722.

---

[5] In fact, at the hearing, counsel for plaintiff did not even raise this issue. (Tr. 187-92.)